UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:13CR00224 (RNC) |
| | : | |
| v. | : | |
| | : | |
| J. EDWARD WAESCHE IV | : | JUNE 24, 2019 |

## MEMORANDUM IN AID OF SENTENCING

J. Edward Waesche IV respectfully submits this memorandum in aid of sentencing.

### I. Background

On December 9, 2013, before United States Magistrate Judge Donna F. Martinez, Mr. Waesche entered a plea of guilty to a one count Information charging him with Conspiracy in violation of 18 U.S.C. § 371. At the time the plea was entered before Judge Martinez, the parties also entered into a cooperation agreement in which the defendant agreed to cooperate in connection with an ongoing investigation and prosecution in United States v. Carpenter, et al., 3:13CR00226 (RNC). Mr. Carpenter was convicted and sentenced to 30 months' incarceration. Mr. Waesche's sentencing has been held in abeyance pending the conclusion of the proceedings in the Carpenter matter.

### II. Sentencing Calculations

A Presentence Report ("PSR") has been prepared and the sentencing proceeding is scheduled for July 9, 2019. The plea agreement in this matter contains no guideline calculations because both parties agreed at the time of the plea that the guidelines would be greater than the statutory maximum sentence of five (5) years. Accordingly, as noted at PSR ¶ 4, pursuant to USSG §5G1.1, the applicable guideline term of imprisonment is 60 months. The government

1

and Mr. Waesche agreed to a three-level reduction of the adjusted offense for acceptance of responsibility pursuant to USSG §3E1.1(a) and (b).  Mr. Waesche and the government did not agree to a specific criminal history computation in the plea agreement, but Mr. Waesche agreed to waive his right to appeal provided the sentence imposed does not exceed 60 months' imprisonment and 3 years' supervised release.

The PSR does, however, calculate the guidelines.  It provides at PSR ¶ 105 that under the fraud table, U.S.S.G. § 2B1.1(a)(2), the base offense level is 6 because the maximum statutory term of imprisonment under 18 U.S.C. § 371 is less than 20 years.  A 22-level increase to the base offense level is recommended pursuant to U.S.S.G. § 2B1.1(b)(1)(L) because the loss amount attributable to the conspiracy that was relevant and readily foreseeable offense conduct is $52,237,537.26.  The PSR also attributes a two-level increase to the base offense level pursuant to U.S.S.G. § 2B1.1(b)(10) for sophisticated means.  After the three-point reduction for acceptance of responsibility, Mr. Waesche's total offense level is 27.  The PSR calculates Mr. Waesche's criminal history score as 0, which is Criminal History Category as I.  A total offense level 27, coupled with a CHC I, results in a corresponding guideline range of 70 to 87 months, a fine range of $12,500 to $125,000, and a term of supervised release of three years.

We have no objection to the guideline calculations as outlined in the PSR.

### III.    Legal Framework of Sentencing in Federal Court

The Court is well-aware of the standards for sentencing in federal court and we will not repeat those standards here in detail other than to note several points.  "To impose a procedurally reasonable sentence, a district court must (1) normally determine the applicable Guidelines range, (2) consider the Guidelines along with the other factors under § 3553(a), and (3) determine whether

to impose a Guidelines sentence or a non-Guidelines sentence." United States v. Villafuerte, 502 F.3d 204, 206–07 (2d Cir. 2007). Further, in determining an appropriate sentence the Court must apply the "parsimony clause" set forth in 18 U.S.C. § 3553(a), which provides that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing.

Those purposes reflect the need for the sentence that is imposed:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

See 18 U.S.C. § 3553(a) (2).

Second, in determining what sentence will best achieve these purposes in each case, the sentencing court considers the following factors:

1. The nature and circumstances of the offense and the history and characteristics of the defendant;

2. The kinds of sentences available and the applicable sentence under the Sentencing Guidelines;

3. Pertinent policy statements issued by the Sentencing Commission;

4. The need to avoid unwarranted sentence disparities among similar defendants guilty of similar conduct; and

     5.     The need to provide restitution to any victims.

See 18 U.S.C. § 3553(a) (1), (a) (3) - (a) (7).

Finally, given these requirements, it is necessary for a sentencing court to consider, among other factors, an individual defendant's personal history and characteristics. In other words, Section 3553(a) "requires sentencing courts to treat the Guidelines only as a starting point, and then to craft an appropriate sentence taking full account of 'the history and characteristics of the defendant.'" United States v. Preacely, 628 F.3d 72, 84 (2d Cir. 2010) (Lynch, J. concurring). In this case, an examination of the necessary factors from 18 U.S.C. § 3553(a) we believe supports a sentence of no more than one year of probation or supervised release.

### IV.    Mr. Waesche's History and Characteristics

> [S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, 'the history and characteristics of the defendant.'

United States v. Adelson, 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006) (Rakoff, J.), *aff'd, in part*, 237 F. App'x 713 (2d Cir. 2007) and *aff'd*, 301 F. App'x 93 (2d Cir. 2008).

By way of Mr. Waesche's background history and characteristics, at the time of sentencing he will be a couple of months shy of his 61st birthday. Early on after his contact with the government, Mr. Waesche began cooperating with the government. This cooperation was extremely active and helpful. Mr. Waesche's cooperation was sincere and reflected the great regret that he felt as a result of his conduct and demonstrated his true rehabilitation.

Probably nothing speaks higher of Mr. Waesche's rehabilitation than his commitment with regard to his cooperation. Mr. Waesche has steadfastly remained committed to helping the government and making amends to society for his actions and his poor choices. The difference between Mr. Waesche's cooperation in this case and more "traditional" cooperation was described in United States v. Torres Teyer, 2006 WL 3511885, *8 (S.D.N.Y. 2006).

In Torres Teyer, the district court explained that "[t]here are two distinct rationales for considering cooperation in sentencing. One rationale is strictly utilitarian; a critic might even find it coldly cynical. From this perspective, the purpose of reducing a cooperator's sentence is to benefit society by furthering law enforcement. . . . No matter how horrible an offender's crimes, how unlikely his prospect of rehabilitation, how dangerous he might be, an informer deserves a reward for the benefit conferred on society by his assistance in investigating and prosecuting wrongdoers. To the extent that a sentence reduction represents simply a price paid for a benefit conferred, it has little to do with the ordinary purposes of sentencing, and everything to do with a specific policy recognized by the Congress and the Sentencing Commission in 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1.'"

But, more important in this case, the district court continued:

The second reason for recognizing cooperation, however, fits more closely within the purposes of sentencing that must be taken into account under section § 3553(a). To the extent that a decision to cooperate with the authorities represents an expression of genuine remorse, and a decision to make amends to society and cut one's ties to the criminal underworld, it may indicate that the defendant's character is less incorrigible than it may have otherwise appeared, and that the need for protection of the public - a critical goal of sentencing under § 3553(a)(2)(C) - is to some extent reduced. If the effort to assist the authorities comes to naught, the defendant is not entitled to a reward, but even if his cooperation leads to no tangible benefit, it may still be relevant to an assessment of his character and his future dangerousness. That assessment is expressly the responsibility of the sentencing court under § 3553(a).

5

Id. at *9.

  Mr. Waesche's cooperation demonstrates his genuine remorse, his respect for the law, and his understanding of and respect for the agreement he made with the government and is further proof that his past behavior is exactly that – past.  It demonstrates in no uncertain terms "an expression of genuine remorse, and a decision to make amends to society . . . .  "It is simply the greatest and most powerful evidence of Mr. Waesche's rehabilitation.

  Mr. Waesche worked extremely hard, and for a long time, as part of his agreement to cooperate.  He first met with the government in April 2013 – over six years ago.  He assisted the government throughout its investigation; he met with the government many times, for many hours over many days, including weekends.  He testified for three days at the trial in Carpenter.  The Court found his testimony credible.  See, e.g., Verdicts and Special Findings, United States v. Carpenter, 3:13CR00226 (RNC), at 26, 64.  Mr. Waesche has gone above and beyond what many cooperators do and did so over an extremely extended period of time.  Indeed, Mr. Waesche has been cooperating with the government for over six years and has been under the supervision of this Court since December 13, 2013 – over 5 ½ years – which is longer than the statutory maximum sentence.  That in itself is unusual and demonstrates his commitment, his rehabilitation and the extremely low risk of recidivism he poses.

  Another point that can't be overlooked his Mr. Waesche's pretrial adjustment.  Despite his 5 ½ years under supervision, not once has he been back before this Court.  He has been the lowest risk classification and deservedly so.  He simply is not someone who is going to be back in front of a criminal court again.

6

## VI. Examination of the § 3553(a) Factors

In this case, an examination of the § 3553(a) factors, we believe, suggests that a sentence of no more than one year of probation or supervised release is appropriate.

### A. Deterrence

The Court must consider the need for the sentence to provide adequate general and specific deterrence. Regarding general deterrence, it is always difficult to calibrate how severe a sentence is needed to adequately deter others. As the Court no doubt is aware, research generally indicates that increases in the certainty of punishment, as opposed to the severity of punishment, are more likely to produce deterrent benefits. See Valerie Wright, Ph.D., "Deterrence in Criminal Justice, Evaluating Certainty vs. Severity of Punishment." The Sentencing Project, November 2010 at 4.

The concept of general deterrence also depends on the dissemination of information about the prosecution and sentence. Usually the public is neither privy to the specifics of sentencing policy in general, nor to the specifics of a person or a particular sentence and therefore lacks the ability to properly evaluate a particular sentence for its deterrent effect. Id. at 3. Thus, because it is impossible to precisely determine the general deterrent effect of the length of a sentence, general deterrence should not be *the driving force* in deciding Mr. Waesche's sentence. Prioritizing general deterrence would always require the maximum sentence and imposing such a sentence would conflict with the other statutory sentencing purposes, particularly in Mr. Waesche's case.

Regarding specific deterrence, Mr. Waesche knows and understands the seriousness of his actions. He has understood it for years and has faced the consequences, personally and professionally. Yet despite this he has neither waivered in his commitment to his agreement nor stumbled while on supervision. He has demonstrated that specific deterrence is no longer

7

necessary in his case.

### B. <u>Retribution</u>

The Court also must consider the need for the sentence imposed to (1) reflect the seriousness of the offense, (2) provide just punishment for the offense, and (3) promote respect for the law.

There is no doubt that Mr. Waesche has been convicted of a serious offense. But based on his efforts over many years to do the right thing – to make up for his mistakes – retribution should not be a predominant factor in his sentencing. Moreover, Mr. Waesche has suffered punishment for his actions. He is a convicted felon; he has lost his professional licenses and professional standing. And while we understand that this is because of his own actions, the need for punishment must be balanced with his successful efforts over the last six years. When balanced with that, further punishment is not necessary. A sentence of probation, for example, promotes respect for the law – it sends the message that when if you break the law, it is very important how you conduct yourself thereafter. In Mr. Waesche's case it is amply demonstrated by his commitment to right his wrongs, to help the government and to stay out of any further trouble – all of which he has done.

### C. <u>Incapacitation and Rehabilitation</u>

The Court must also consider the need for the sentence imposed to "protect the public from further crimes of the defendant." We cannot walk away from Mr. Waesche's conduct. But we also cannot ignore that his conduct over the last six years obviates the need for incapacitation and rehabilitation. He has stayed out of trouble throughout this time so the need for incapacitation simply isn't a necessary goal in this particular case.

As for rehabilitation, Mr. Waesche's cooperation and success over the past almost six years, as we described earlier, speaks volumes about his rehabilitation.  Mr. Waesche will not be in a criminal court again.

## CONCLUSION

Based on Mr. Waesche's extraordinary successes since the time of his arrest, his determined and successful efforts to assist the government in investigating and prosecuting Carpenter, his credible testimony regarding Mr. Carpenter's actions, and his determination that there be no further blemish in his life, we respectfully request a sentence of no greater than one year of probation or supervised release and no fine based upon the expected restitution order, to which Mr. Waesche has no objection.

Respectfully submitted,

By: /s/ James K. Filan
James K. Filan (ct 15565)
Filan LLC
315 Post Road West
Westport, CT  06880
(203) 557-9159
(203) 341-8560 fax
jfilan@jamesfilan.com

9

**CERTIFICATE OF SERVICE**

    I hereby certify that a copy of the foregoing Memorandum in Aid of Sentencing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

                                                        /s/ James K. Filan
                                                        James K. Filan