UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **Redacted Version** |
| | : | |
| v. | : | Criminal No.  3:13-cr-224 (RNC) |
| | : | |
| JOSEPH EDWARD WAESCHE, IV | : | July 1, 2019 |

**GOVERNMENT'S SENTENCING MEMORANDUM AND MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION FOR DOWNWARD DEPARTURE**

The United States of America (the "Government") has filed a "substantial assistance" motion in this case pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G."). The Government requests that the Court impose a fair and appropriate sentence below the defendant's applicable guideline range because the defendant has provided substantial assistance to the Government in the investigation or prosecution of other persons who have committed criminal offenses.  The nature, extent, and significance of the defendant's cooperation are detailed in this memorandum.  The Government also asks the Court to order the defendant to pay restitution in the amount of $569,327.27.

**I.     INTRODUCTION**

   **A.     Offense Conduct**

The Government agrees with the offense conduct and relevant conduct set forth in the Pre-Sentence Report ("PSR"), which is drawn principally from the Court's Verdict and Special Findings (hereinafter, the "Verdict") in *United States v. Daniel Carpenter*, 3:13-cr-226(RNC) (Docket Entry # 212), the evidence adduced at Carpenter's trial, and other information obtained during the course of the investigation.

In summary, from approximately 2006 to 2013, the defendant, Joseph Edward Waesche IV, conspired with Daniel Carpenter, Wayne Bursey, and others to defraud life insurance

companies into issuing Stranger-Originated Life Insurance ("STOLI") policies—high-value universal life insurance policies on the lives of elderly straw insureds that Carpenter could resell on the life settlement market after the two-year contestability period. *See* PSR ¶¶ 9, 97-98; Verdict at 84. Carpenter, Mr. Waesche, and the other co-conspirators used material misrepresentations in the insurance applications and the cloak of a corrupted welfare benefit plan called the Charter Oak Trust ("COT") to fraudulently induce the life insurance companies to issue the STOLI policies, which the companies would not have issued had they known the policies were STOLI policies. *See* PSR ¶¶ 9, 97-98; Verdict at 84.

Based on their misrepresentations, they fraudulently procured 84 insurance policies that had a total aggregate death benefit of more than $459 million on the lives of 76 different straw insureds. *See* PSR ¶ 99; Gov't Ex. 1.[1] In addition, another company controlled by Carpenter received more than $12 million in commissions from the insurance providers, who would not have paid the commissions had they known about the false representations. *See* Gov't Ex. 3.

### B. Mr. Waesche's Guilty Plea and Cooperation Agreement

On December 9, 2013, Mr. Waesche waived indictment and pleaded guilty to a one-count information charging him with conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. § 371. *See* PSR ¶ 1. At that time, he also entered into a cooperation agreement with the Government. *See* Def.'s Sentencing Mem. at 1; Gov't Ex. 1920. The facts related to Mr. Waesche's cooperation with the Government are detailed below.

### C. Trial and Sentencing of Daniel Carpenter

On December 12, 2013, based in part on information provided by Mr. Waesche, a grand jury returned a 33-count indictment charging Carpenter and Wayne Bursey with wire fraud, mail

---

[1] Citations in this memorandum to "Gov't Ex. __" refer to the Government Exhibits admitted at the trial of Mr. Carpenter. Citations to "Carpenter Trial Tr. __" refer to the transcript from the trial of Mr. Carpenter.

fraud, and conspiracy to commit mail and wire fraud. On May 14, 2014, the same grand jury returned a 57-count superseding indictment that added charges of money laundering conspiracy, illegal monetary transactions, and money laundering. *See* PSR ¶ 3; Verdict at 2.  Mr. Bursey passed away prior to trial and the case against him was dismissed.  A bench trial in the case against Carpenter commenced on February 16, 2016 and concluded on March 21, 2016. Mr. Waesche was called as a Government witness and testified over the course of three days against Carpenter. *See* Carpenter Trial. Tr. 675-1254. On June 6, 2016, the district court found Carpenter guilty on all 57 counts. *See* Verdict at 90-91. On December 3, 2018, the Court sentenced Carpenter to 30 months of imprisonment, followed by three years of supervised release. *See* PSR ¶ 3. The Court also ordered Carpenter to pay restitution to several of the insurance companies in the total amount of $12,865026. *See id.*[2]

### D. Mr. Waesche's Guidelines Calculation

Mr. Waesche faces a maximum penalty of 5 years of imprisonment. *See* 18 U.S.C. § 371; PSR ¶ 166.  The PSR determined that Mr. Waesche's adjusted offense level is 30. *See* PSR ¶¶ 105-110. After a three-level downward adjustment for acceptance of responsibility, Mr. Waesche's total offense level is 27.[3]  *See* PSR ¶¶ 112-114.  Mr. Waesche has no criminal history, which places him in Criminal History Category I. *See* PSR ¶ 119.  His resulting Guidelines range is 60 months of imprisonment before any departure. *See* PSR ¶ 167.

---

[2] The Court ordered additional briefing in Carpenter's case regarding the Government's motion for additional restitution to reinsurers. The parties have submitted their briefs and are awaiting a decision from the Court.

[3] At sentencing, because Mr. Waesche has assisted authorities by timely notifying the Government of his intention to plead guilty, the Government intends to make a motion that the Court award the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

## II.     DISCUSSION

The Government respectfully requests that the Court impose a fair and appropriate sentence. Although the PSR determined and the parties agree that the Guidelines range in this case is 60 months of imprisonment, the Government requests that the Court depart downward pursuant to section 5K1.1 of the Sentencing Guidelines because Mr. Waesche has provided substantial assistance to the Government in the investigation and prosecution of two co-conspirators: Carpenter, who was the mastermind of the scheme, and Bursey, who was Carpenter's brother-in-law and "trustee" of the Charter Oak Trust. As part of the sentence, the Court also should order Mr. Waesche to pay restitution, jointly and severally with Carpenter, in the amount of $569,327.27 to Penn Mutual, which was one of the insurance carriers that was defrauded.

### A.     The Court should depart downward pursuant to § 5K1.1 because Mr. Waesche has provided substantial assistance to the Government

Section 5K1.1 of the Sentencing Guidelines permits the Court to depart from a defendant's applicable Sentencing Guideline range "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense . . . ." U.S.S.G. § 5K1.1. Section 3553(e) of Title 18 of the United States Code permits the Court to impose a sentence of imprisonment below the otherwise applicable statutory minimum under the same circumstances. The decision whether to file a motion for downward departure "'is expressly lodged in the prosecutor's discretion.'" U.S.S.G. § 5K1.1; *United States v. Garcia*, 926 F.2d 125, 128 (2d Cir. 1991) (quoting *United States v. Rexach*, 896 F.2d 710, 713 (2d Cir. 1990)); *United States v. Huerta*, 878 F.2d 89 (2d Cir. 1989). The *Huerta* court observed that the question of "substantial assistance" is "self-evidently a question that the prosecution is uniquely fit to resolve." *Huerta*, 878 F.2d at 93. *See also United*

*States v. Scarpa*, 861 F.3d 59, 67-68 (2d Cir. 2017) (examining substantial-assistance criteria under Fed. R. Crim. P. 35(b), which is "construed similarly" to § 3553(e) and U.S.S.G. § 5K1.1).

Section 5K1.1(a) of the Guidelines provides that upon the filing of a motion for downward departure, the appropriate reduction shall be determined by the Court based upon, but not limited to, the following considerations:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance; and

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1. Application Note 3 to the commentary of Section 5K1.1 provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." *See also Rexach*, 896 F.2d at 713.

### 1. Nature and Extent of Mr. Waesche's Assistance

Mr. Waesche began providing substantial assistance to the Government in April 2013, well before he pleaded guilty. *See* Carpenter Trial Tr. 993-94. From April 2013 to February 2016, Mr. Waesche met with the Government on approximately a dozen occasions. *See id.* As Mr. Waesche correctly notes in his sentencing memorandum, these meetings often lasted many hours, including on weekends. *See id.*; Def.'s Sentencing Mem. at 6. During these meetings, Mr. Waesche provided detailed information about Carpenter, Bursey, the COT, and other co-conspirators. He described the origins of the COT and the scheme to defraud, how the scheme operated, and, most importantly,

Carpenter's role and Bursey's role in devising and executing the scheme. █████

█████████████████████████████

█████████████████████████████

█████████████████████ He also testified over the course of three days as a Government witness in the trial against Carpenter.[4]

### 2. Significance and Usefulness of Mr. Waesche's Assistance

Mr. Waesche's assistance has been valuable. Mr. Waesche █████████ was important in securing the indictment and superseding indictment that charged Carpenter and Bursey with 57 counts of wire fraud, mail fraud, money laundering, illegal monetary transactions, and conspiracy to commit those offenses. Similarly, Mr. Waesche's testimony and the other information he provided were vital parts of the government's case at Carpenter's trial, and helped secure convictions of Carpenter on all counts. Indeed, Mr. Waesche was critical in explaining to the Court (as fact finder) the inner workings of the scheme, and the Court referenced Mr. Waesche's testimony in its Verdict at least ten times—not including the myriad other references to e-mails to which Mr. Waesche was a party and also discussed in his testimony.

Carpenter's prosecution was a significantly worthy one. As the Court is aware, Carpenter was previously convicted in the District of Massachusetts on 19 counts of mail and wire fraud for misappropriating client escrow funds and defrauding his victims out of more than nine million dollars. *See United States v. Carpenter*, 781 F.3d 599, 603, 607 (1st Cir. 2015). Then, in this case, the scheme that Carpenter devised and orchestrated caused an actual loss of more than $52 million to the victim insurance companies. *See* PSR ¶ 99. As the Court noted, not only did Carpenter defraud his victims, "Carpenter corrupted the people who worked for him [and] he corrupted the

---

[4] It is also significant to note that the Government is not aware of any compliance issues during the 5 ½ years that Mr. Waesche has been on release since his guilty plea.

straw [insureds] who participated in this scheme[.]" Carpenter Sentencing Tr., Dec. 3, 2018, at 129. The Court expressly found that Carpenter is a "threat" to others and "presents a very significant risk of re-offense." Carpenter Sentencing Tr., June 27, 2018, at 82, 84; Carpenter Sentencing Tr., Dec. 3, 2018, at 184.

In short, Carpenter is a significant danger to others. Based, in part, on Mr. Waesche's substantial assistance, Carpenter is now incarcerated for 30 months.

### 3. Truthfulness, Completeness and Reliability of Mr. Waesche's Information and Testimony

The information that Mr. Waesche provided to Government has been complete, truthful and reliable. Much of the information he provided was corroborated through the testimony of other trial witnesses and documentary evidence introduced at Carpenter's trial. *See, e.g.*, Verdict at 25; 28-29; 64 (Court stated that it "credit[s] Mr. Waesche's testimony.").

### 4. Timeliness of the Mr. Waesche's Assistance

Mr. Waseche provided timely assistance in this case. As discussed, he began providing information to the Government in April 2013, months before he pleaded guilty and the indictment against Carpenter and Bursey.

### 5. Injury to Mr. Waesche Resulting from His Assistance

The Government is unaware of any threats against or harms suffered by the defendant or his family as a result of his cooperation. Nonetheless, there is always some risk associated with being identified as a cooperating witness. For example, in 2016, the Federal Judicial Center ("FJC") published a report summarizing the results of a 2015 national survey of district judges, U.S. Attorneys, Federal Defenders, probation officers, and others involved in the criminal justice system, which was conducted at the request of the Judicial Conference's Court Administration and Case Management ("CACM") Committee. *See* FJC, Survey of Harm to Cooperators: Final Report,

7

dated February 12, 2017, *available at* https://www.fjc.gov/content/310414/survey-harm-cooperators-final-report. The survey found that hundreds of criminal defendants, or their friends and family members, had been harmed or threatened after court documents revealed that they had cooperated with the Government. *Id.*; *see United States v. Doe*, 2019 WL 1081675, at *4-*5 (D. Conn. Mar. 6, 2019) (Thompson, J.) (citing FJC report, and noting the threats and harms to cooperators). In Mr. Waesche's case, the fact of his cooperation is already a matter of public record as he testified at Carpenter's trial. This poses an increased risk to Mr. Waesche when compared to other cooperating witnesses who do not testify and whose cooperation remains under seal.

In sum, the Government believes that Mr. Waesche's cooperation, as described above, warrants a downward departure. Accordingly, the Court should impose a fair and appropriate below-Guidelines sentence.

### B.     The Court should order Mr. Waesche to pay restitution.

As part of the sentence, the Court should order Mr. Waesche to pay restitution in the amount of $569,327.27 to Penn Mutual, to be paid jointly and severally with Mr. Carpenter.

18 U.S.C. § 3663A requires that the Court order full restitution to the victims of the offense—in this case the insurance companies and their reinsurers. As the offense involved a scheme and conspiracy to defraud, Mr. Waesche must pay the losses of victims "directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2). The Court also must order that Mr. Waesche "reimburse the victim for . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). Such expenses include attorney's fees and other related expenses incurred by the victims in assisting in the Government's investigation. *See United States v. Amato*, 540 F.3d 153, 159 ("We hold that 'other expenses'

incurred during the victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense may include attorney fees and accounting costs.").

If, however, "more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

Here, the total actual loss (including attorney's fees and other related expenses incurred by the victims in assisting in the Government's investigation) for restitution purposes is $52,420,891.50. *See* PSR § 100. However, the Government believes that it would be inequitable to compel Mr. Waesche to make restitution in that amount to the same extent as Mr. Carpenter, who conceived of and led all aspects of the scheme. Mr. Waesche was only involved in the issuance of nine (9) policies through Penn Mutual, eighteen (18) policies through Phoenix, and two (2) policies through Lincoln. *Id*. Phoenix and Lincoln did not suffer losses on the 20 policies on which Mr. Waesche was involved. *Id*. Penn Mutual suffered an actual loss (excluding fees) of approximately $490,866.27 on the policies. *Id*. In addition, Penn Mutual incurred an additional $78,461.00 in assisting the Government in its investigation, for a total actual loss for restitution purposes of $569,327.27. *Id*.

Unlike Carpenter, who was economically invested in the entire scheme, Mr. Waesche only stood to make money, in the form of commissions, on the policies in which he was directly involved. *Id*. Indeed, Carpenter (and not Mr. Waesche) stole two death benefits in the total amount of approximately $30 million, and used that money to further invest in his scheme and for personal purposes, including the purchase of a Rhode Island beach house. *Id*. Mr. Waesche did not economically benefit from the scheme in that way. *Id*.

Accordingly, pursuant to 18 U.S.C. § 3664(h), the Government respectfully asks the Court to order Mr. Waesche to pay restitution for losses on only those policies that he was directly involved in procuring that caused an actual loss to the insurance carriers. As such, the Government asks the Court to enter a restitution order of $569,327.27 in favor of Penn Mutual, to be paid jointly and severally with Carpenter.

### III.  CONCLUSION

The Government believes that Mr. Waesche's assistance to the Government warrants the filing of a substantial assistance motion requesting that the Court depart downward from the applicable Guideline range. Mr. Waesche cooperated by meeting with the Government on a dozen occasions, providing information about Carpenter, Bursey, and the fraudulent scheme, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆, and testifying for three days at the trial against Carpenter, who the Court found was the mastermind who devised and orchestrated the fraud. Mr. Waesche's cooperation substantially assisted in convicting Carpenter, resulting in his current incarceration.  Accordingly, the Government respectfully requests the Court impose a fair and appropriate below-Guidelines sentence that includes an order of restitution.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Neeraj N. Patel*
NEERAJ N. PATEL
ASSISTANT U.S. ATTORNEY
Federal Bar No. phv04499
157 Church Street, 25th Floor
New Haven, CT 06510
Tel: 203-821-3700
Email: Neeraj.Patel@usdoj.gov

>*/s/ David E. Novick*
>DAVID E. NOVICK
>ASSISTANT U.S. ATTORNEY
>Federal Bar No. phv02874
>157 Church Street, 25th Floor
>New Haven, CT 06510
>Tel: 203-821-3700
>Email: David.Novick@usdoj.gov

### **CERTIFICATE OF SERVICE**

I hereby certify that on July 1, 2019, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.  In addition, a copy was sent by e-mail to the following persons:

>*/s/ Neeraj N. Patel*
>Neeraj N. Patel
>Assistant United States Attorney